Concurring opinion filed by Circuit Judge Srinivasan.
 

 Opinion concurring in the judgment filed by Senior Circuit Judge Randolph.
 

 Wilkins, Circuit Judge:
 

 This case involves a lawsuit brought under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. 102-256,
 
 106 Stat. 73
 
 (1992), by an American citizen who sued two foreign officials from the Democratic Republic of the Congo ("DRC") for alleged torture over a six-week period. Plaintiff seeks compensatory and punitive damages.
 

 Defendants moved to dismiss for lack of subject matter jurisdiction; lack of personal jurisdiction; and insufficient service of process. The District Court granted the motion to dismiss, holding the court lacked subject matter jurisdiction because the defendants are immune under the common law foreign official immunity doctrine.
 

 For the reasons set forth below, we conclude that Defendants are not entitled to foreign official immunity under the common law. Because such immunity does not apply in this case, we vacate the ruling of the District Court dismissing for lack of subject matter jurisdiction and remand for further proceedings. In the opinion by Senior Judge Randolph, which is joined in relevant part by Judge Srinivasan, we provide the alternative holding that the TVPA displaces conduct-based immunity in this context.
 

 I.
 

 The following facts are taken from the complaint and assumed true on review of Defendants' motion to dismiss.
 
 Scandinavian Satellite Sys., AS v. Prime TV Ltd.
 
 ,
 
 291 F.3d 839
 
 , 844 (D.C. Cir. 2002). In April 2016, Plaintiff Darryl Lewis, an American citizen, was in the DRC working as an "unarmed security advisor" to Moise Katumbi. J.A. 4. Katumbi, the former governor of the Katanga Province, was running for president of the DRC. In his complaint, Plaintiff asserts that, on April 24, 2016, he was traveling by car with a colleague in Lubumbashi when he was stopped by a local police officer near a political rally. Lewis, his colleague, and colleagues in a separate vehicle were detained by the National Intelligence Agency, Agence Nationale de Renseignements ("ANR"). Plaintiff describes being physically assaulted during the arrest process and being accused of being an American mercenary soldier, which he denies. Lewis and his colleagues were then transported to a local jail, where ANR members continued to assault them during a lengthy interrogation. The following morning, they were transported by air to Kinshasa, where Lewis was incarcerated and interrogated daily for six weeks. Plaintiff alleges that he was interrogated daily by ANR members for approximately sixteen hours a day and was intentionally starved and denied sleep and basic hygienic necessities.
 

 Plaintiff claims that Defendant Kalev Mutond, General Administrator of the ANR, was involved in his detention in Kinshasa, at one point warning him: "Don't let me find out you're a mercenary." J.A. 7. Plaintiff further claims that Defendant Alexis Thambwe Mwamba, DRC Minister of Justice, publicly accused him of being a mercenary sent to assassinate President Joseph Kabila during a press conference on May 4, 2016, claiming to have "documented proof." J.A. 7. The following day on May 5, 2016, the U.S. Embassy in Kinshasa allegedly issued a statement condemning the remarks concerning Lewis and mercenary activities. Lewis was released on June 8, 2016, having never been charged with a crime.
 

 Plaintiff contends that Defendants are liable under the TVPA. The TVPA creates
 an express cause of action against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation ... subjects an individual to torture."
 
 28 U.S.C. § 1350
 
 (note) sec. 2(a). Plaintiff's complaint alleges that "Defendants at all times used their respective positions of authority to act under apparent authority or color of law of the DRC with respect to the actions alleged in this complaint." J.A. 11. Rather than order his release from custody and protect him from torture, Plaintiff argues, Defendants enabled the abuses described in the complaint.
 

 Defendants moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that Plaintiff's complaint alleges acts exclusively taken in Defendants' official capacity. Because foreign officials enjoy immunity from suits based on official acts committed in their official capacities, Defendants argued, the District Court lacked jurisdiction. The District Court agreed and granted Defendants' motion to dismiss.
 
 Lewis v. Mutond
 
 ,
 
 258 F.Supp.3d 168
 
 , 172 (D.D.C. 2017). Plaintiff timely appealed.
 

 II.
 

 This Court reviews
 
 de novo
 
 the District Court's dismissal for lack of subject-matter jurisdiction.
 
 Simon v. Republic of Hungary
 
 ,
 
 812 F.3d 127
 
 , 135 (D.C. Cir. 2016). The defendant bears the burden of proving foreign official immunity.
 
 Cf.
 

 Phoenix Consulting Inc. v. Republic of Angola
 
 ,
 
 216 F.3d 36
 
 , 40 (D.C. Cir. 2000) (explaining that a foreign state defendant who asserts the defense of immunity under the Foreign Sovereign Immunities Act "bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity").
 

 A.
 

 Because this case involves foreign officials - not foreign states - the issue of immunity is governed by the common law, not the Foreign Sovereign Immunities Act ("FSIA").
 
 See
 

 Samantar v. Yousuf
 
 ,
 
 560 U.S. 305
 
 , 325,
 
 130 S.Ct. 2278
 
 ,
 
 176 L.Ed.2d 1047
 
 (2010) (noting that a case "in which respondents have sued petitioner in his personal capacity ... is properly governed by the common law"). The doctrine of common law foreign immunity distinguishes between two types of immunity: status-based and conduct-based immunity. Status-based immunity is reserved for diplomats and heads of state and attaches "regardless of the substance of the claim." Chimène I. Keitner,
 
 The Common Law of Foreign Official Immunity
 
 , 14 GREEN BAG 2d 61, 64 (2010) ;
 
 see also
 

 Yousuf v. Samantar
 
 ,
 
 699 F.3d 763
 
 , 774 (4th Cir. 2012). Conduct-based immunity is afforded to "any [ ] [p]ublic minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." Restatement (Second) of Foreign Relations Law § 66(f) (1965) (hereinafter Restatement);
 
 see also
 

 Matar v. Dichter
 
 ,
 
 563 F.3d 9
 
 , 14 (2d Cir. 2009) ;
 
 Samantar
 
 ,
 
 699 F.3d at 774
 
 .
 

 As explained by the Supreme Court in
 
 Samantar
 
 , a two-step procedure is used to determine whether a foreign official is entitled to conduct-based foreign sovereign immunity.
 
 Samantar
 
 ,
 
 560 U.S. at 311-12
 
 ,
 
 130 S.Ct. 2278
 
 . At the first step, a foreign official requests a "suggestion of immunity" from the State Department and, if granted, the District Court is divested of its jurisdiction.
 
 Id
 
 . at 311,
 
 130 S.Ct. 2278
 
 . If the State Department does not grant a suggestion of immunity, the District Court is authorized to decide whether
 
 all
 
 the requisites for foreign-official
 immunity exist.
 
 Id
 
 . at 311-12,
 
 130 S.Ct. 2278
 
 .
 

 B.
 

 We turn to the two-step procedure outlined in
 
 Samantar
 
 to evaluate Defendants' claim to conduct-based immunity. At step one,
 
 see
 

 Samantar
 
 ,
 
 560 U.S. at 311-12
 
 ,
 
 130 S.Ct. 2278
 
 , we conclude that Defendants are not entitled to immunity. On August 9, 2016, the DRC Ambassador to the United States sent a letter to the United States Department of State denying Plaintiff's allegations and requesting that the State Department submit a suggestion of immunity to the court. This request was reiterated in a December 13, 2016 follow-up letter. However, the State Department did not accede to the plea of the DRC, and never issued a request that the District Court surrender its jurisdiction.
 

 At step two, we consider whether Defendants satisfy the requisites for conduct-based immunity. The Supreme Court has "expressed no view on whether Restatement [2d of Foreign Relations] § 66 correctly sets out the scope of the common-law immunity applicable to current or former foreign officials."
 
 Samantar
 
 ,
 
 560 U.S. at
 
 321 n.15,
 
 130 S.Ct. 2278
 
 . Here, however, both parties assume § 66 accurately sets out the scope of common-law immunity for current or former officials,
 
 see
 
 Appellees' Br. 14 & n.4, and we therefore proceed on that understanding without deciding the issue. Assuming, as the parties do, that Restatement § 66 captures the contours of common-law official immunity, Defendants are not entitled to immunity.
 

 Under Restatement § 66, the court considers three factors. First, whether the actor is a public minister, official, or agent of the foreign state. Restatement § 66(f). Second, whether the acts were performed in her official capacity.
 

 Id.
 

 And third, whether exercising jurisdiction would serve to enforce a rule of law against the foreign state.
 

 Id.
 

 To establish conduct-based immunity, a defendant must establish all three factors. Restatement § 66 cmt. b ("Public ministers, officials, or agents of a state ... do not have immunity from personal liability
 
 even for acts carried out in their official capacity
 
 , unless the effect of exercising jurisdiction would be to enforce a rule against the foreign state." (emphasis added) ).
 

 As a result, to enjoy conduct-based immunity as defined by the Restatement, Defendants must satisfy the third factor by proving that exercising jurisdiction in this case is tantamount to enforcing a rule of law against the DRC itself.
 
 See
 
 Restatement § 66(f). Defendants attempt to prove this, in part, by arguing that "Plaintiff's suit seeks to hold high-ranking DRC government officials liable for official conduct carried out entirely within the DRC." Appellees' Br. 30. This position elides the second and third elements for establishing conduct-based immunity. The second immunity element focuses on the nature of Defendant's acts and whether they were taken within an "official capacity." By contrast, the third element considers whether the remedies sought by Plaintiff serve to enforce a rule of law against the DRC. That element, as understood through the lens of the small number of decisions speaking to the existence and scope of common-law immunity, would allow for immunity when a judgment against the official would bind (or be enforceable against) the foreign state.
 
 See
 
 Beth Stephens,
 
 The Modern Common Law of Foreign Official Immunity
 
 , 79 FORDHAM L. REV . 2669, 2676-78 (2011) (examining cases).
 

 This approach is reinforced by the illustrations in the Restatement commentary. For example, the Restatement explains:
 

 X, an official of the defense ministry of state A, enters into a contract in state B with Y for the purchase of supplies for the armed forces of A. A disagreement arises under the contract and Y brings suit in B against X as an individual, seeking to compel him to apply certain funds of A in his possession to satisfy obligations of A under the contract. X is entitled to the immunity of A.
 

 Restatement § 66, cmt. B(2).
 

 Defendants have not proffered anything to show that Plaintiff seeks to draw on the DRC's treasury or force the state to take specific action, as would be the case if the judgment were enforceable against the state. Defendants in this case are being sued in their individual capacities and Plaintiff is not seeking compensation out of state funds. J.A. 2;
 
 see also
 
 Appellant's Br. 27 ("[T]he monetary liability sought here against individuals ... would have no effect on the state treasury."). Defendants argue that the effect on the DRC's treasury is "irrelevant" because "[e]xercising jurisdiction here would compel the DRC's sitting Minister of Justice and General Director of the National Intelligence Agency to defend their handling of a high-profile domestic security matter in U.S. courts." Appellees' Br. 32. Taking such foreign officials away from their official duties in the DRC, Defendants argue, is a "sufficient sanction to constitute enforcing a rule of law on the DRC." Appellees' Br. 32 (alterations and quotations omitted). But these collateral effects are too attenuated to be equated with the direct fiscal impacts on the foreign state that are contemplated by the Restatement.
 
 Cf.
 

 Edelman v. Jordan
 
 ,
 
 415 U.S. 651
 
 , 663,
 
 94 S.Ct. 1347
 
 ,
 
 39 L.Ed.2d 662
 
 (1974) ("[E]ven though a State is not named a party to the action, ... [if] the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity." (citation omitted) ). In cases like this one, in which the plaintiff pursues an individual-capacity claim seeking relief against an official in a personal capacity, exercising jurisdiction does not enforce a rule against the foreign state. Defendants are thus not entitled to the conduct-based foreign official immunity. In view of our conclusion that Defendants have not satisfied the necessary third element of conduct-based immunity, we need not address Plaintiff's arguments relating to the first two elements.
 

 III.
 

 For these reasons, we vacate the District Court's grant of Defendant's motion to dismiss for lack of subject matter jurisdiction and remand for further proceedings. Defendants argue that, even if the District Court has subject matter jurisdiction, this Court should affirm on the basis that the court lacks personal jurisdiction over them. Defendants claim they do not have "any connection to the United States, and all of the conduct at issue is alleged to have occurred entirely within the DRC." Appellees' Br. 33 (citing
 
 Mwani v. bin Laden
 
 ,
 
 417 F.3d 1
 
 , 8 (D.C. Cir. 2005) );
 
 see also
 
 Fed. R. Civ. P. 4(k)(2). Plaintiff's memorandum in opposition to Defendants' motion to dismiss disagreed but requested jurisdictional discovery if the court were inclined to agree with Defendants.
 
 See
 

 Second Amendment Found. v. U.S. Conference of Mayors
 
 ,
 
 274 F.3d 521
 
 , 525 (D.C. Cir. 2001) ("Certainly, 'a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery.' " (quoting
 
 El-Fadl v. Cent. Bank of Jordan
 
 ,
 
 75 F.3d 668
 
 , 676 (D.C. Cir. 1996) ) (alterations omitted) ). The District Court neither addressed Defendants' personal jurisdiction argument nor ruled on Plaintiff's request for jurisdictional discovery.
 

 Lewis v. Mutond
 
 ,
 
 258 F.Supp.3d 168
 
 , 174-75 (D.D.C. 2017). We decline to decide the matter in the first instance. Accordingly, on remand, the District Court should consider the question of personal jurisdiction and whether Plaintiff is entitled to jurisdictional discovery.
 

 So ordered.