Broidy Capital v. Benomar

# United States Court of Appeals
## for the Second Circuit

————————

AUGUST TERM, 2019

(Argued: October 23, 2019　　　Decided: December 6, 2019)

Docket No. 19-236

————————

BROIDY CAPITAL MANAGEMENT LLC, ELLIOTT BROIDY,

*Plaintiffs-Appellants*,

—v.—

JAMAL BENOMAR,

*Defendant-Appellee.*

————————

Before: KATZMANN, *Chief Judge*, CHIN AND DRONEY, *Circuit Judges*.

————————

Plaintiffs Elliott Broidy and Broidy Capital Management LLC appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*) granting defendant Jamal Benomar's motion to dismiss for lack of subject matter jurisdiction. The district court concluded that Benomar possessed diplomatic immunity from suit under the Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. We agree. Plaintiffs bear the burden of establishing jurisdiction, here by establishing by a preponderance of the evidence that an exception to diplomatic immunity applies. Plaintiffs argue that their suit can proceed pursuant to the

commercial activity exception to diplomatic immunity, which permits suits "relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." VCDR art. 31(1)(c). However, plaintiffs failed to meet their burden of proof to establish that the exception applied by presenting evidence to support their allegations that Benomar engaged in such activity. Plaintiffs also argue that the district court abused its discretion in denying jurisdictional discovery and leave to amend. However, plaintiffs failed to request jurisdictional discovery as directed by the district court, and amendment would be futile because plaintiffs' proposed amended complaint did not cure the original complaint's jurisdictional deficiencies. Accordingly, we **AFFIRM** the judgment of the district court.

_____

SHANNEN W. COFFIN (Filiberto Agusti, Linda C. Bailey, *on the brief*), Steptoe & Johnson LLP, Washington, D.C., *for Plaintiffs-Appellants*.

ABBE DAVID LOWELL (Eric W. Bloom, *on the brief*), Winston & Strawn LLP, Washington, D.C., *for Defendant-Appellee*.

MARTIN TOTARO, Attorney, Appellate Staff Civil Division, U.S. Department of Justice (Marik A. String, Acting Legal Adviser, U.S. Department of State, Joseph H. Hunt, Assistant Attorney General, Sharon Swingle, Attorney, Appellate Staff Civil Division, U.S. Department of Justice, *on the brief*), *for* the United States, *Amicus Curiae*.

_____

KATZMANN, *Chief Judge*:

This case calls on us to determine who bears the burden of establishing jurisdiction pursuant to an exception to diplomatic immunity under the Vienna Convention on Diplomatic Relations ("VCDR" or the "Vienna Convention"),

2

Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95, where a defendant has demonstrated diplomatic status. Plaintiffs Elliott Broidy and Broidy Capital Management LLC appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*) dismissing their suit against Jamal Benomar, a Moroccan diplomat, for lack of subject matter jurisdiction. On appeal, plaintiffs challenge the district court's conclusion that Benomar possessed diplomatic immunity from suit under the Vienna Convention, and argue that the district court erred in imposing on plaintiffs the burden of establishing jurisdiction by showing that their suit could proceed under one of the VCDR's exceptions to diplomatic immunity. Plaintiffs also contend that the district court abused its discretion in denying jurisdictional discovery and leave to amend the complaint. For the reasons below, we hold that, where a defendant has demonstrated diplomatic status, plaintiffs bear the burden of proving by a preponderance of the evidence that an exception to diplomatic immunity applies and that jurisdiction exists. The plaintiffs having failed to meet that burden, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

Elliott Broidy is the chief executive officer and chairman of Broidy Capital Management LLC. Until early 2018, he served as the Deputy Finance Chair of the Republican National Committee. In late 2017 and early 2018, Broidy's computer systems were hacked, and trade secrets and personal information were stolen. Materials stolen in the hack were organized thematically and then disseminated to U.S. media outlets. Broidy alleges that the state of Qatar, believing Broidy to be an influential detractor responsible for President Trump's public criticism of Qatar in June 2017, engineered the cyberattack in order to discredit Broidy and curtail his influence.

Broidy subsequently filed several lawsuits seeking to hold Qatar and various alleged Qatari agents accountable for the hack. *See Broidy Capital Mgmt., LLC et al. v. State of Qatar et al.*, No. 2:18-cv-02421-JFW-E (C.D. Cal.) (the "California Action"); *Broidy Capital Mgmt., LLC et al. v. Muzin et al.*, No. 1:19-cv-00150-DLF (D.D.C.). On July 23, 2018, Broidy filed suit in the United States District Court for the Southern District of New York against Jamal Benomar, a Moroccan native and dual Moroccan-U.K. citizen who served as a high-ranking diplomat with the United Nations ("U.N.") for twenty-four years before stepping

4

down as the U.N. Under-Secretary-General for Conflict Prevention on July 1, 2017. Broidy alleged that Benomar had served as a secret Qatari agent since at least 2017 and that Benomar had been paid by Qatar to participate in the alleged Qatari hacking scheme. According to the complaint, Benomar engaged in commercial activity when he purportedly participated in reviewing and organizing the hacked materials and planning their dissemination to the media, and he engaged in increased contacts with other participants in the conspiracy prior to, during, and after the hack and media distribution of hacked materials.[1]

Prior to the first in-court conference in the case, Benomar filed a letter stating that he was currently a Moroccan diplomat and that he intended to move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to diplomatic immunity. In a subsequent declaration, Benomar represented that he had served as a diplomat with the Moroccan Permanent Mission to the United Nations ("Moroccan Mission") since November 1, 2017. However, he acknowledged that the Moroccan Permanent Mission had not begun the process of seeking U.S. diplomatic credentials for him

---

[1] Plaintiffs allege both federal question jurisdiction and diversity of citizenship jurisdiction, and alleged violations of the "Defend Trade Secrets Act," 18 U.S.C. § 1836 *et seq.*, and state law causes of action.

until after Broidy's complaint was filed in July 2018. Accordingly, the United States had not made a determination as to Benomar's diplomatic immunity when the complaint was filed.

While briefing was pending on Benomar's motion to dismiss, the U.S. Department of State confirmed that the U.S. Mission to the United Nations ("U.S. Mission") had registered Benomar with full diplomatic privileges and immunities as of November 13, 2018. Plaintiffs acknowledged the State Department's determination but argued that their case could nevertheless proceed because it arose out of commercial or professional activity (Benomar's alleged paid work for Qatar) excepted from diplomatic immunity under the VCDR.

The district court rejected this argument, finding that Benomar was entitled to diplomatic immunity and granting his motion to dismiss for lack of subject matter jurisdiction. The district court denied both plaintiffs' request for jurisdictional discovery and plaintiffs' request, made for the first time after the district court had granted the motion to dismiss, to provide the court with a request for the production of specific documents relevant to jurisdictional discovery. In rejecting the latter request, the court explained that it had

6

previously instructed plaintiffs to make any specific jurisdictional discovery requests in their opposition to the motion to dismiss and that plaintiffs had failed to do so. The district court also denied plaintiffs' motion for leave to amend the complaint as futile because the proposed amended complaint would also have been subject to dismissal for lack of subject matter jurisdiction. This appeal timely followed.

## DISCUSSION

**I.  The district court properly dismissed the complaint for lack of subject matter jurisdiction**

### A.  Standard of review

We review *de novo* a district court's legal conclusions granting or denying immunity and its dismissal of a claim for lack of subject matter jurisdiction. *Brzak v. United Nations*, 597 F.3d 107, 110–11 (2d Cir. 2010). We also "review *de novo* a district court's interpretation of a treaty such as the Vienna Convention." *Swarna v. Al-Awadi*, 622 F.3d 123, 132 (2d Cir. 2010).[2]

"[T]he district court can refer to evidence outside the pleadings" when resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

---

[2] Unless otherwise noted, when quoting cases, all internal quotation marks, citations, and alterations are omitted.

*Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002). "[E]videntiary matter[s] may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). "On appeal from a dismissal under Rule 12(b)(1), we review the court's factual findings for clear error…." *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

## B.     Treaty and statutory framework

Diplomatic immunity in the United States is governed by the Vienna Convention on Diplomatic Relations, which was ratified by the United States in 1972. The Vienna Convention primarily "codified longstanding principles of customary international law with respect to diplomatic relations." *767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United Nations*, 988 F.2d 295, 300 (2d Cir. 1993). However, it also modernized the law of diplomatic immunity in accordance with the prevailing functional view of diplomatic immunity as intended "not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States." VCDR pmbl.; *see* Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations 4-5 (Eileen Denza ed., 4th ed. 2016). Accordingly, the VCDR reserves the broadest immunity for those most integral to the diplomatic mission, active

8

"diplomatic agents," defined to include "the head of the mission or a member of the diplomatic staff of the mission."[3] VCDR art. 1(e). Diplomatic agents are entitled to complete immunity from the criminal jurisdiction of the receiving State. *Id.* art. 31(1). A diplomatic agent is also entitled to immunity from the civil and administrative jurisdiction of the receiving State, with exceptions for three categories of cases:

> (a) A real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;
>
> (b) An action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State;
>
> (c) An action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

*Id.*

"In interpreting a treaty, it is well established that we begin with the text of the treaty and the context in which the written words are used." *Swarna*, 622 F.3d

---

[3] "The 'head of the mission' is the person charged by the sending State with the duty of acting in that capacity . . . ." VCDR art. 1(a). "The 'members of the diplomatic staff' are the members of the staff of the mission having diplomatic rank . . . ." *Id.* art. 1(d).

at 132. Where the text is "difficult or ambiguous," we may both employ "general rules of construction" and "look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 535 (1991); *see also Medellin v. Texas*, 552 U.S. 491, 507 (2008) ("Because a treaty ratified by the United States is an agreement among sovereign powers, we have also considered as aids to its interpretation the negotiation and drafting history of the treaty as well as the postratification understanding of signatory nations."). In addition, "although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *United States v. Stuart*, 489 U.S. 353, 369 (1989); *see also Medellin*, 552 U.S. at 513 ("It is . . . well settled that the United States' interpretation of a treaty is entitled to great weight.").

The Diplomatic Relations Act ("DRA") incorporated the VCDR into U.S. law and repealed contradictory earlier legislation. Pub. L. No. 95-393, 92 Stat. 808 (1978) (codified at 22 U.S.C. §§ 254a-e, 28 U.S.C. § 1364). The DRA makes clear that a district court must dismiss "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding

10

under the Vienna Convention." 22 U.S.C. § 254d. While not altering or augmenting the VCDR's substantive provisions, the DRA provides certain procedural clarifications as to how diplomatic immunity may be established and asserted, including that, when a lawsuit is filed against someone who claims the protection of diplomatic immunity, "[s]uch immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure." *Id.*

### C.     Plaintiffs bear the burden of establishing jurisdiction

Generally, the plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving that it exists by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Diplomatic immunity is a matter of subject matter jurisdiction. *See Brzak*, 597 F.3d at 110-11; *Tachiona v. United States*, 386 F.3d 205, 209, 215 (2d Cir. 2004). Accordingly, where the defendant has demonstrated diplomatic status, it would seem to follow that the plaintiff must prove by a preponderance of the evidence that an exception to diplomatic immunity applies.[4]

----

[4] Courts in this circuit have consistently required the plaintiff to prove jurisdiction by a preponderance of the evidence where VCDR immunity is claimed, at least where courts explicitly state what burden of proof is being

Plaintiffs argue, however, that courts should instead require defendants with diplomatic immunity to bear the ultimate burden of persuasion in proving that no exception to diplomatic immunity applies. Plaintiffs rely on a line of cases interpreting the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-11, which governs the jurisdiction of courts in suits brought against foreign states and their agents and instrumentalities. Certain courts, including this one, have applied a unique "burden-shifting framework" in determining jurisdiction where there is a claim of foreign sovereign immunity. *See, e.g.*, *Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 242 (2d Cir. 2002); *Phoenix Consulting Inc. v. Republic of Angl.*, 216 F.3d 36, 40 (D.C. Cir. 2000); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n.6 (5th Cir. 1989) (per curiam). Under the burden-shifting approach, "[o]nce the defendant presents *prima facie* evidence that it is a foreign sovereign, the burden falls on the plaintiff to establish by a preponderance of the evidence that an exception under the FSIA permits jurisdiction over the foreign sovereign." *Swarna*, 622 F.3d at 143. If the plaintiff

---

applied. *See, e.g.*, *Koumoin v. Ban Ki-Moon*, No. 16-cv-2111 (AJN), 2016 U.S. Dist. LEXIS 172953, at *9 (S.D.N.Y. Dec. 14, 2016); *Hilt Constr. & Mgmt. Corp. v. Permanent Mission of Chad to the United Nations*, No. 15-cv-8693 (VB), 2016 U.S. Dist. LEXIS 77959, at *3 (S.D.N.Y. June 15, 2016); *Devi v. Silva*, 861 F. Supp. 2d 135, 139 (S.D.N.Y. 2012); *Baoanan v. Baja*, 627 F. Supp. 2d 155, 160 (S.D.N.Y. 2009).

meets this burden, the defendant claiming FSIA immunity "then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Id*. The burden-shifting approach appears to come directly from the FSIA's legislative history.[5] The United States argues as amicus that this statement in the legislative history was in error and is inconsistent with the text of the FSIA.

Regardless of whether the burden-shifting approach is appropriate as applied to the FSIA, there is no justification for extending it to VCDR immunity. The FSIA, as a statute that was enacted after the VCDR and was not intended to affect diplomatic immunity under the VCDR, is generally inappropriate for use "as an interpretive guide for the Vienna Convention." *Tabion v. Mufti*, 73 F.3d 535, 538 n.7 (4th Cir. 1996); *see 767 Third Ave.*, 988 F.2d at 297 ("[T]he diplomatic and consular immunities of foreign states recognized under various treaties remain unaltered by the [FSIA]."). Moreover, the VCDR and DRA do not share

---

[5] *See* H.R. Rep. No. 94-1487, at 17 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6616 ("Once the foreign state has produced such prima facie evidence of immunity, the burden of going forward would shift to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. The ultimate burden of proving immunity would rest with the foreign state."); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988) (citing this legislative history as the source of the burden-shifting approach).

the unique legislative history that has been used to justify the burden-shifting approach as applied to the FSIA.

The DRA's legislative history, in contrast to the FSIA's, includes specific disclaimers of any intention to impose special proceedings on the courts where diplomatic immunity is claimed. *See* S. Rep. No. 95-958, at 5 (1978) (noting that a prior version of the bill that would be enacted as the DRA had been revised because that version "might be read to impose on the courts a new special motion procedure in immunity cases"). The DRA, as enacted, strongly suggests that the usual rules should be applied in assessing jurisdiction where diplomatic immunity is claimed. *See* 22 U.S.C. § 254d ("[I]mmunity may be established upon motion or suggestion . . . *or as otherwise permitted by law or applicable rules of procedure*.") (emphasis added). And courts regularly require plaintiffs to bear the burden of establishing jurisdiction where other types of immunity are claimed.[6]

---

[6] Plaintiffs point out that some courts have applied the FSIA burden-shifting standard where common law foreign official immunity is claimed. However, the case plaintiffs identify that does so relies on FSIA case law without discussing why the FSIA standard should apply in the common law foreign official immunity context. *See Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019). It is not clear that it is correct to use the FSIA's standard in this context, as common law foreign official immunity is distinct from FSIA immunity and predates the FSIA. *Samantar v. Yousuf*, 560 U.S. 305, 323 (2010). Moreover, this approach is not universally accepted. *See, e.g., Rosenberg v. Pasha*, 577 F. App'x 22,

*See, e.g., Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (per curiam); *Makarova*,

201 F.3d at 113; *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 84 (2d Cir. 2001).

Accordingly, where a defendant has demonstrated diplomatic status, we

hold that plaintiffs bear the burden of proving by a preponderance of the

evidence that an exception to diplomatic immunity applies and that jurisdiction

therefore exists.[7]

---

23 (2d Cir. 2014) (summary order) (applying the usual rule that plaintiffs bear the burden of proving jurisdiction by a preponderance of the evidence where defendants move to dismiss under Rule 12(b)(1) based on common law foreign official immunity).

[7] For the first time on appeal, plaintiffs also argue that the district court erred in requiring plaintiffs to bear this burden of proof at the motion to dismiss stage, rather than leaving the jurisdictional determination for trial after the conclusion of discovery. As plaintiffs failed to raise this argument below or otherwise object to the district court's resolution of the jurisdictional question at the motion to dismiss stage, the argument is waived. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 252-53 (2d Cir. 2017) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."). Moreover, plaintiffs' argument is entirely meritless, as deferral of a jurisdictional issue until trial is an extremely "unusual situation," *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013) (per curiam), appropriate only where "the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury," *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006). Here, the district court did not need to resolve the ultimate merits question of Benomar's liability for plaintiffs' alleged injuries in order to resolve the jurisdictional question of whether Benomar had, while a diplomat, engaged in commercial or professional

**D.    The commercial activity exception to diplomatic immunity does not apply to plaintiffs' claims**

We next turn to the question of whether plaintiffs met their burden of establishing that an exception to diplomatic immunity applies. Plaintiffs claim that their suit can proceed pursuant to the commercial activity exception to diplomatic immunity, which permits a diplomat to be sued in "[a]n action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." VCDR art. 31(1)(c). While the precise contours of the phrase "professional or commercial activity," which is not defined in the VCDR, are unsettled, it is broadly understood to refer to trade or business activity engaged in for personal profit. *See Tabion v. Mufti*, 73 F.3d 535, 537 (4th Cir. 1996). Plaintiffs contend that Benomar engaged in commercial activity because of his alleged for-profit work on the hack and smear campaign in late 2017 and early 2018. The United States argues as amicus that the complaint fails even to allege application of the commercial activity exception because it alleges only conduct occurring before Benomar obtained status-based immunity, and, in the United States' view, the commercial activity exception

conduct outside of his diplomatic role.

16

does not apply to conduct before the diplomat obtained status-based immunity. However, we need not reach the question of when activity must occur to qualify for the commercial activity exception or what type of activity qualifies because it is clear from the record that plaintiffs failed to meet their burden of proving by a preponderance of the evidence that Benomar at any time engaged in the alleged smear campaign.

Plaintiffs attached three documents to their opposition to the motion to dismiss, only one of which, a transcript of a deposition of alleged Qatari agent Joey Allaham, taken during discovery in the California action, was relevant to corroborating their allegations of commercial activity. In the transcript segment submitted, Allaham's only statement relevant to Benomar was that he had at one point considered suing Benomar over money that Qatar owed Allaham, but that he decided not to after his lawyers advised him that suing Benomar would be a "waste" of his money. Joint App'x at 249. In his reply brief in support of his motion to dismiss, Benomar submitted additional pages from the Allaham deposition transcript, in which Allaham specifically affirmed that he never discussed the hack of Broidy's emails with Benomar.

Plaintiffs supplied no other evidence in support of their allegations. The complaint refers to phone records showing that Benomar was in regular telephone contact with participants in the alleged hacking conspiracy at key points close to the hack and media distribution. Plaintiffs did not, however, attach any of these records, which they represent they obtained in discovery in the California action, to their opposition to the motion to dismiss. Moreover, record evidence is inconsistent with plaintiffs' allegations concerning the nature of these calls: Benomar submitted a declaration affirming that he had received no renumeration from Qatar and that his communications with Qatari representatives were in furtherance of his diplomatic duties for Morocco.

Reviewing this evidence, the district court rightly concluded that plaintiffs had failed to meet their burden of proving by a preponderance of the evidence that Benomar had engaged in commercial or professional activity. Plaintiffs submitted no evidence whatsoever that Benomar was engaged in the activity or received the payments alleged, only a snippet of a deposition transcript that, viewed in the context of the additional transcript pages submitted by Benomar, is both unpersuasive and misleadingly out of context. As plaintiffs failed to establish that the commercial activity exception to diplomatic immunity applied,

we find that Benomar is entitled to diplomatic immunity under the terms of the Vienna Convention, and plaintiffs' claims against him were properly dismissed for lack of subject matter jurisdiction.[8]

## II. The district court did not abuse its discretion in denying jurisdictional discovery

Plaintiffs also argue that the district court erred in denying their request for jurisdictional discovery. "We review a district court's denial of jurisdictional discovery for abuse of discretion . . . ." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016). "A district court has wide latitude to determine the scope of discovery." *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009). Moreover, "[t]he district court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990).

Plaintiffs' arguments ignore the fact that the district court offered plaintiffs an opportunity to make specific jurisdictional discovery requests, and plaintiffs

---

[8] As we find that plaintiffs failed to establish that Benomar engaged in the alleged smear campaign, we need not address the further questions of whether the alleged activity itself would qualify as professional or commercial activity under the VCDR or whether it occurred in the relevant time period for claiming application of the exception.

19

failed to do so. The district court clearly instructed plaintiffs to make any specific discovery requests in their opposition to the motion to dismiss. However, instead of making specific requests, plaintiffs merely stated in a summary paragraph at the end of their opposition that they were entitled to discovery. Plaintiffs then attempted to supply the district court with an actual request for production of documents for the first time *after* the district court had denied their general request for discovery and granted Benomar's motion to dismiss. Plaintiffs' own failure to follow the district court's procedures for seeking jurisdictional discovery does not constitute grounds for reversal of the district court's decision.

Further, contrary to plaintiffs' contentions otherwise, it was appropriate for the district court to balance the need for jurisdictional discovery with the risk of imposing discovery obligations on a diplomat who in fact possesses immunity from the court's jurisdiction—and, moreover, who generally "is not obliged to give evidence as a witness" under the VCDR. VCDR art. 31(2). Like sovereign immunity, diplomatic immunity protects the diplomatic mission "from the expense, intrusiveness, and hassle of litigation." *Arch Trading*, 839 F.3d at 206. Achieving this goal requires that "a court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction." *Id.*

In the FSIA context, this Court has described discovery as "warranted only to verify allegations of specific facts crucial to an immunity determination" and inappropriate where "plaintiffs do not yet know what they expect to find from discovery" and advance only broad demands for discovery of the kind plaintiffs advanced in their opposition to the motion to dismiss. *Id.* at 207 (affirming denial of jurisdictional discovery where "plaintiffs did not specify . . . what discovery they might seek").

Accordingly, the district court did not abuse its discretion in denying plaintiffs jurisdictional discovery.

### III. The district court did not abuse its discretion in denying leave to amend the complaint

Finally, plaintiffs argue that the district court abused its discretion in denying leave to amend their complaint. "We review the district court's denial of leave to amend for abuse of discretion." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend . . . for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.*

21

Here, permitting plaintiffs to amend their complaint as requested would have been futile.[9] Plaintiffs' proposed amended complaint simply adds conclusory allegations and legal arguments already either included in the original complaint or presented to the district court in plaintiffs' opposition to the motion to dismiss. New allegations do not advance plaintiffs towards meeting their burden of proof in establishing jurisdiction. *See Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) ("[I]t was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction."), *overruled on other grounds by Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 398 (2d Cir. 2014). If plaintiffs had evidence to support the new allegations relevant to jurisdiction, they could and should have presented that evidence to the district court in their opposition to the motion to

---

[9] Plaintiffs' primary argument on appeal that they should have been permitted leave to amend rests on a mischaracterization of the record. Plaintiffs argue they should have been permitted to amend because Benomar received diplomatic status one day before they filed their opposition to the motion to dismiss and they had no opportunity to address his new status. However, plaintiffs were aware from before the first in-court conference in the case that Benomar planned to claim diplomatic immunity, and, even more to the point, plaintiffs affirmatively stated in a letter following Benomar's change of status that they believed their opposition adequately addressed Benomar's changed diplomatic status and that no further briefing was required.

dismiss, as the district court explicitly instructed plaintiffs to do when denying their motion to amend the complaint prior to the motion to dismiss. Allowing such a futile amendment would be particularly prejudicial where the defendant is a diplomat who possesses treaty-based immunity from suit. Therefore, as the proposed amendments would not enable plaintiffs to establish jurisdiction and would not affect the proper dismissal of the complaint, the district court did not abuse its discretion in denying plaintiffs leave to amend.

## CONCLUSION

For the reasons stated, we affirm the judgment of the district court.