*Jacubovich v. State of Israel*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of May, two thousand twenty.

PRESENT:  GUIDO CALABRESI,
 RICHARD C. WESLEY,
 RICHARD J. SULLIVAN,
  *Circuit Judges*.

-------------------------------------------------------------------

NICOLE SOFIA JACUBOVICH, CALANIT DIVA JACUBOVICH,

 *Plaintiffs-Appellants*,

 v.                                                    No. 19-2970-cv

STATE OF ISRAEL, COMPUTERSHARE INC., COMPUTERSHARE TRUST COMPANY, N.A.,

 *Defendants-Appellees*.

-------------------------------------------------------------------

FOR PLAINTIFFS-APPELLANTS: KATHLEEN M. KUNDAR (Jami L. Mevorah, *on the brief*), Fox Horan & Camerini LLP, New York, NY.

FOR DEFENDANTS-APPELLEES: SAMUEL N. LONERGAN, Arnold & Porter Kaye Scholer LLP, New York, NY (Robert Reeves Anderson, Arnold & Porter Kaye Scholer LLP, Denver, CO, Stephanna F. Szotkowski, Arnold & Porter Kaye Scholer LLP, Chicago, IL, Stephen K. Wirth, Arnold & Porter Kaye Scholer LLP, Washington, DC, *on the brief*), *for Defendant-Appellee* State of Israel.

SANDRA D. HAUSER, Dentons US LLP, New York, NY, *for Defendants-Appellees* Computershare Inc., Computershare Trust Company, N.A.

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Nicole Sofia Jacubovich and Calanit Diva Jacubovich (together, "Appellants") appeal from a judgment of the district court (Buchwald, *J.*) dismissing their claims against Defendants-Appellees Computershare Inc.,

Computershare Trust Co., N.A. (together, "Computershare"), and the State of Israel (collectively, "Appellees") arising from Appellees' alleged failure to transfer to the Appellants the proceeds of bonds issued by the Israeli government (the "Bonds"). The district court determined that Israel was immune from suit under the Foreign Sovereign Immunities Act ("FSIA") and that Computershare was not a proper defendant because it did not serve as Israel's fiscal agent for the Bonds. Appellants contend that the district court erred in granting Appellees' motions to dismiss because Israel waived its foreign sovereign immunity or is barred from asserting it under the FSIA and Computershare is a proper defendant; Appellants further assert that the district court erred in denying their request for leave to amend their complaint. Because Israel is immune from this suit, Computershare is not a proper defendant, and leave to amend would be futile, we affirm. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Israel Is Immune from This Suit Under the FSIA

We review a district court's decision regarding subject matter jurisdiction under the FSIA *de novo* for legal conclusions and its factual findings for clear error. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 150–51 (2d Cir.

3

2001). The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 200 (2d Cir. 2016) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). "Under the FSIA, a foreign sovereign and its instrumentalities are immune from suit in the United States courts unless a specific statutorily defined exception applies." *Id.* (internal quotation marks omitted). "Absent such an exception, the immunity conferred by the FSIA strips courts of both subject matter and personal jurisdiction over the foreign state." *Id.* Nevertheless, the FSIA permits courts to exercise jurisdiction over foreign sovereigns in any case "in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). "The waiver exception is narrowly construed," *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1022 (9th Cir. 1987), such that waiver under the FSIA must be unambiguous and unmistakable in order to be effective, *see, e.g.,* *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017–18 (2d Cir. 1991).

A. Israel Did Not Explicitly Waive Its Sovereign Immunity

Appellants maintain that Israel explicitly waived its foreign sovereign immunity in this case through the waiver provision of the U.S. prospectus that accompanied the bond offering. But the U.S. prospectus clearly applies only to

4

U.S. bond purchases, not to international bond purchases like those at issue in this case. For starters, the U.S. prospectus expressly provides that it covers bond sales only by the Development Corporation for Israel ("DCI"). It then defines DCI as the "sole and exclusive underwriter of the bonds *in the United States.*" J. App'x at 174 (emphasis added). It next cautions that "Israel is not offering to sell or soliciting offers to buy any securities other than the bonds offered under this prospectus supplement." *Id.* at 156.

If that were not enough, the U.S. prospectus expressly states that sales to international purchasers are subject to different terms and conditions. With respect to international sales, it provides that "Israel may sell the bonds outside of the United States through additional underwriters or dealers, as will be described in the applicable prospectus supplement." *Id.* at 166; *see also id.* at 175 (explaining that prospectuses and other investment documentation "are available outside of the United States from the appropriate local underwriter"). It then explicitly warns that "[a]ny use of this prospectus supplement and the accompanying prospectus . . . other than in connection with the offering of the bonds [underwritten by DCI], is unauthorized." *Id.* at 156–57.

Consequently, we agree with the district court that the U.S. prospectus and its applicable supplement, when read as a whole, do not extend to the Bonds at issue here. *See Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 282 (D.C. Cir. 2014) (reading waiver provision in context of entire contract to determine whether defendant had expressly waived immunity).

Appellants alternatively argue that, even if the U.S. prospectus does not apply to internationally purchased bonds, their bonds were actually purchased in the United States. But the record amply supports the district court's conclusion that the Bonds were purchased internationally, and Appellants offer no evidence to suggest that the district court's factual finding was clearly erroneous.

### B. Israel Did Not Implicitly Waive Its Sovereign Immunity

Appellants next contend that Israel implicitly waived its foreign sovereign immunity in this action because it submitted to a separate 28 U.S.C. § 1782 proceeding before Judge Failla in connection with Appellants' Argentine criminal action against their grandfather. We are unpersuaded.

"[D]istrict courts have discretion to determine that the conduct of a party in litigation does [not] constitute a waiver of foreign sovereign immunity in light of the circumstances of a particular case." *Canadian Overseas Ores Ltd. v. Compania de*

6

*Acero del Pacifico S.A.*, 727 F.2d 274, 278 (2d Cir. 1984). The district court properly exercised its discretion to hold that Israel did not implicitly waive its sovereign immunity by voluntarily complying with Appellants' subpoena in the § 1782 proceeding.

In determining whether a foreign sovereign has implicitly waived its immunity, we have drawn on the three examples of implied waiver described in the FSIA's legislative history: (1) "where a foreign state has agreed to arbitration in another country;" (2) "where a foreign state has agreed that the law of a particular country should govern a contract;" and (3) "where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." *Shapiro*, 930 F.2d at 1017 (internal quotation marks omitted). "These examples involve circumstances in which the waiver was unmistakable, and courts have been reluctant to find an implied waiver where the circumstances were not similarly unambiguous." *Id.* Both this Court and other Circuits have held that conduct short of a responsive pleading, such as engaging in discovery, is insufficient to meet this stringent waiver standard. *See, e.g.*, *Canadian Overseas*, 727 F.2d at 277–78; *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287–90 (5th Cir. 1993);

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443–45 (D.C. Cir. 1990).

Appellants nevertheless maintain that Israel implicitly waived sovereign immunity by voluntarily complying with their discovery requests in the § 1782 proceeding. But Israel has maintained since the beginning of *this* lawsuit that it is immune under the FSIA. It has not taken any actions in this litigation that suggest a contrary intent, and Appellants do not identify a case in which a foreign sovereign's conduct in one proceeding has been held to impliedly waive sovereign immunity in a different proceeding. Moreover, as the district court noted, Appellants' implicit waiver contention would undermine § 1782's "twin aims": to "provid[e] efficient means of assistance to participants in international litigation in our federal courts" and to "encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Malev Hungarian Airlines v. United Techs. Int'l Inc.* (*In re Malev Hungarian Airlines*), 964 F.2d 97, 100 (2d Cir. 1992).

### C. Israel Cannot Be Estopped from Asserting Sovereign Immunity

Appellants next assert that Israel is equitably estopped from asserting sovereign immunity because it engaged in "bad faith efforts to deceive and mislead" them as to where it was amenable to suit. Appellants' Br. at 45. But

8

leaving aside the accuracy of Appellants' characterizations, this argument fails for the simple reason that equitable estoppel is not a cognizable exception to the FSIA.

"[T]he Supreme Court [has] emphasized that the FSIA is 'comprehensive[,]' . . . meaning that 'after the enactment of the FSIA, the Act – and not the preexisting common law – indisputably governs the determination of whether a foreign state is entitled to sovereign immunity.'" *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 113 (2d Cir. 2017) (quoting *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141 (2014)). The FSIA enumerates seven exceptions to sovereign immunity: (1) waiver, (2) commercial activities, (3) takings contrary to international law, (4) succession, gifts, and rights in real property, (5) noncommercial torts, (6) arbitral awards, and (7) terrorism. *See* 28 U.S.C. §§ 1605(a), 1605A, 1605B. Courts are "prohibit[ed] [from] creating new exceptions to the FSIA." *Belhas v. Ya'alon*, 515 F.3d 1279, 1287 (D.C. Cir. 2008). We therefore cannot estop Israel from asserting sovereign immunity.[1]

---

[1] Appellants also maintain that the first and second clauses of 28 U.S.C. § 1605(a)(2) apply to strip Israel of its sovereign immunity. In oral argument before the district court, Appellants' counsel referred vaguely to "the possibility of the exception under sovereign [immunity] for commercial activity," acknowledging that this possibility "ha[d] not been explored" and had "not been argued on this motion." J. App'x at 503. Because Appellants' § 1605(a)(2) arguments were not properly briefed below, we decline to consider them for the first time on appeal. *See Otal Invs. Ltd. v. M/V Clary*, 673 F.3d 108, 120 (2d Cir. 2012); *Halpert Enters., Inc. v. Harrison*, No. 07-1144, 2008 WL 4585466, at *3 & n.1 (2d Cir. Oct. 15, 2008).

## II. The District Court Did Not Abuse Its Discretion When It Declined to Order Additional Jurisdictional Discovery

Appellants maintain that the district court should have permitted them to conduct additional jurisdictional discovery to determine where the Bonds were actually purchased. But a district court has "wide latitude to determine the scope of discovery," and we will not overturn "a district court's denial of jurisdictional discovery" unless it amounts to an "abuse of discretion." *Arch Trading*, 839 F.3d at 206 (internal quotation marks omitted).

Appellants' claim fails because Appellants never moved for jurisdictional discovery in the district court and did not request it in opposition to the motions to dismiss. To be sure, Appellants' counsel, during oral argument on the motions to dismiss, obliquely stated that while she didn't "have facts" to establish that Appellants' Bonds were purchased in the United States, she "believe[d] that, with further work, we could find the facts." J. App'x at 509. She also stated that she "continue[d] to believe that if we were given the opportunity to proceed in this case with all the evidence, [the] question [of where the Bonds were purchased] may be answered differently." *Id.* at 528. But at no point did Appellants' counsel specifically request jurisdictional discovery or identify what additional facts could establish that the Bonds were sold in the United States to a U.S. purchaser.

10

Accordingly, Appellants have forfeited their contention that the district court abused its discretion by failing to grant jurisdictional discovery. *See, e.g., Otal Invs.*, 673 F.3d at 120.

III. The District Court Properly Dismissed All Claims Against Computershare

We review *de novo* a district court's dismissal of a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019). Computershare – which did not serve as Israel's fiscal agent for the Bonds – played no role in the events underlying the Appellants' claimed injury. As the district court explained, Computershare Trust Co. of Canada ("CTCC") was the entity that served as Israel's fiscal agent for the Bonds, and therefore, any potential claims Appellants have against a fiscal agent arise only against CTCC. The district court thus committed no error in dismissing all claims against Computershare because Computershare is not a proper defendant.

IV. The District Court Properly Denied Appellants Leave
to Amend Their Complaint

Finally, Appellants contend that the district court erred in denying them leave to amend their complaint. Where, as here, the district court denied the plaintiffs leave to amend their complaint on the grounds of futility, we review the

11

denial *de novo*. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

On appeal, Appellants' only contention for permitting amendment of their claims against Israel is that the district court erred in dismissing the suit on sovereign immunity grounds. But since we agree with the district court that Israel is immune from suit, and since Appellants proffer no facts that would alter that conclusion if included in an amended pleading, any amendment with respect to Israel would clearly be futile. The same can be said with respect to Appellants' request to add new claims against Computershare. As explained above, Computershare was not the fiscal agent for the Bonds, so there is no appropriate claim against it. Adding new causes of action against Computershare would not alter the plain terms of the U.S. prospectus, which made clear that Computershare was not the fiscal agent for the Bonds.

Finally, the district court properly determined that any amendment to substitute CTCC as a defendant would be futile because CTCC would not be subject to personal jurisdiction in the district court. As a general matter, plaintiffs bear the burden of establishing personal jurisdiction and "must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d

30, 34–35 (2d Cir. 2010) (internal quotation marks omitted). That prima facie showing must include "an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Id.* at 35 (internal quotation marks omitted).

Here, there is no allegation that CTCC, a Canadian-incorporated and domiciled entity that has no United States place of business and does not operate in the United States, would be subject to general jurisdiction in the district court. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Furthermore, Appellants offer no facts to demonstrate that CTCC's contacts with New York are sufficient to establish specific jurisdiction. *See* N.Y. C.P.L.R. § 302(a). Although representatives of CTCC attended meetings in New York City along with representatives of Appellees, DCI, and Israel Bonds International, Appellants do not allege that any conduct relevant to this case occurred at those meetings. While the fiscal agency agreement between CTCC and Israel does state that it was "executed and delivered in New York, New York," any cause of action that Appellants might bring against CTCC plainly could not arise out of that expressly bilateral agreement, which grants "[n]o rights . . . to any other person" and disclaims the existence of any "third party beneficiaries." Special App'x at 16. Finally, the mere

13

fact that Appellants received two checks from CTCC that reflect a New York bank account is insufficient to establish specific jurisdiction over CTCC, since the record indicates that all the other relevant conduct occurred outside of the United States. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that defendant must not be "haled into a jurisdiction solely as a result of . . . 'attenuated' contacts" (internal quotation marks omitted)); *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (rejecting attempt to assert jurisdiction over a foreign entity through, among other contacts, a "few wire transfers of funds"). Accordingly, the district court properly denied Appellants' request to add CTCC as a defendant.

\* \* \*

We have considered Appellants' remaining contentions and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14